

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-12-2006

# Miller v. Phila Geriatric Ctr

Precedential or Non-Precedential: Precedential

Docket No. 04-3132

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Miller v. Phila Geriatric Ctr" (2006). *2006 Decisions.* Paper 398.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/398

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL


UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 04-3132
_____

VICKI MILLER, Administratrix of the
Estate of Henry S. Miller,

Appellant

v.

PHILADELPHIA GERIATRIC CENTER;
CHARLES BONGIORNO; PHIL MARKOWITZ;
JOHN DOE; JANE DOE;
UNITED STATES OF AMERICA
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 02-cv-01307)
District Judge:  The Honorable William H. Yohn, Jr.
_____

Argued June 29, 2005

Before: NYGAARD, SMITH, and FISHER, <u>Circuit</u> <u>Judges</u>.[1]

(Filed September 12, 2006)


James L. Griffith, Esq. (ARGUED)
Fox Rothschild
2000 Market Street, 10th Floor
Philadelphia, PA 19103
  <u>Counsel for Appellant</u>

K. T. Newton, Esq. (ARGUED)
Office of the United States Attorney
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106
  <u>Counsel for Appellee United States of America</u>

Jill B. Clarke, Esq. (ARGUED)
McKissock & Hoffman
1818 Market Street
Philadelphia, PA 19103
  <u>Counsel for Appellee Phil Markowitz</u>

_____

OPINION OF THE COURT
_____

<hr>

[1] Judge Richard L. Nygaard assumed Senior Status on July 9, 2005.

NYGAARD, <u>Circuit</u> <u>Judge</u>.

This appeal raises issues of some complexity concerning the timeliness of an action brought under the Federal Tort Claims Act and various other state statutes. Vicki Miller, the sister of a mentally retarded man and administratrix of his estate, filed a lawsuit sounding in tort against her brother's physicians and the medical/geriatric facility that provided her brother's care.  Specifically, she filed both a survival claim of negligence and a wrongful death claim under the Federal Tort Claims Act arguing that her brother died because his doctors administered a combination of psychiatric drugs to the point of toxicity, and then failed to diagnose the extent of the toxicity before it became irreversible and terminal. The District Court granted summary judgment, dismissing the claims as untimely.  Miller filed a timely appeal and has assigned numerous errors.  We will reverse.

**I.**

The facts surrounding this appeal require a rather detailed recitation. Decedent Henry Miller was born severely retarded. Although he reached a chronological age of sixty-four, his mental age remained that of a four year old child. Despite this severe impairment, no one was ever appointed his legal guardian. *See* District Ct. Op., at 9. In 1988, he was placed in a Community Living Arrangement through Jewish Educational and Vocational Services. While at JEVS, Dr. Philip Markowitz provided the decedent with psychiatric treatment, including the prescription of psychiatric medications, primarily a combination of Lithium and Haldol. From June 16, 1994 though September 22, 1995, Dr. Carlos Moreno was the decedent's primary physician. During this period Moreno monitored the decedent's blood levels and reported abnormal Lithium levels to the medical coordinator at the JEVS home. Moreno did not

4

prescribe any medication for the decedent.

In October 1995, the decedent was admitted to Frankford Hospital. While hospitalized, the attending physician repeatedly advised Miller that her brother's condition was caused by an adverse reaction to the combination of medication that had been prescribed at the JEVS home by Markowitz. On November 27, 1995, the decedent was transferred to the Philadelphia Geriatric Center, where Dr. Charles Bongiorno was his attending physician. While at PGC, the decedent's condition deteriorated rapidly. He developed a continuous fever, the cause of which was never diagnosed. On September 9, 1997, after his condition became unstable, the decedent was transferred from PGC to Temple University Hospital. He died on September 24, 1997. The cause of death was listed as sepsis.

On September 21, 1999, Miller commenced legal action against the Philadelphia Geriatric Center, Bongiorno, Markowitz

5

and Moreno by filing a praecipe for a writ of summons in the Court of Common of Philadelphia County. Her complaint was filed on March 1, 2000. Moreno was an employee of Greater Philadelphia Health Action Inc., a federally funded health center. Because the GPHA is a grantee of the federal Department of Health and Human Services, its employees are considered employees of the Public Health Service, a federal agency. Federal jurisdiction existed, therefore, under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346. The matter was removed to the United States District Court for the Eastern District of Pennsylvania. The United States was subsequently properly substituted for Moreno as a party to this litigation. On October 20, 2000 the District Court dismissed Miller's claims against the United States without prejudice because she failed to exhaust the available administrative remedies. The remaining claims were later remanded to state

6

court.

Miller then filed an administrative claim with the United States Department of Health and Human Service on December 12, 2000. Not having received a decision from the Department after waiting more than six months, Miller filed an action in the District Court on October 24, 2001 in which she named the United States as a defendant pursuant to the FTCA. On February 26, 2002, Markowitz filed an answer and cross-claim against Moreno in the remanded state court action, and the state court claims were removed to the District Court and consolidated with her newly filed federal court action.[2]

---

[2] Henry Miller died on September 24, 1997, and Vicky Miller filed her suit on September 21, 1999, within the limitations period. The United States was substituted for Dr. Carlos Moreno for the FTCA claims pursuant to 28 U.S.C. § 2679 which governs suits against federal employees acting in the scope of their employment. The District Court then dismissed Miller's case for failure to exhaust her administrative remedies on October 20, 2000. Under 28 U.S.C. §§ 2679(5)(A) and (B), whenever the United States is substituted as the defendant under

7

The Government moved for summary judgment, arguing that Miller's claims were barred by the FTCA's two-year statute of limitations. The Government alleged that the decedent became aware of his injury and its probable cause on October 31, 1995. This date reflects a period in which the decedent was admitted to Frankford Hospital with possible acute rhabdomyolyosis, a serious disease characterized by muscle breakdown. Miller argues that the date from which the statute of limitations should be calculated is September 24, 1997 — the

---

this section and the action is dismissed for failure to first present the claim to the appropriate federal agency, the claim is deemed timely under 28 U.S.C. § 2401(b) "if the claim would have been timely had it been filed on the date the underlying civil action was commenced and the claim is presented to the appropriate Federal agency within 60 days after the dismissal of the civil action." *Id*. Miller filed her administrative claim with the Department of Health and Human Services on December 12, 2000, within the 60 day statutory requirement. *See* 28 U.S.C. § 2679(5)(B). Therefore, after failing to get a response from the agency, her suit against the United States, refiled on October 24, 2001, was treated as if it was filed on September 21, 1999.

8

date of decedent's death. Miller appeals from two orders of the District Court which disposed of her claims against Appellees Markowitz and the United States. The first order granted summary judgment in favor of Appellee the United States, holding that Miller failed to present her claims against the United States to the Department of Health and Human Services within the two year statute of limitations period outlined in the FTCA. *See* 28 U.S.C. § 2401(b). In the second order, the District Court entered judgment in favor of Appellee Markowitz based on Pennsylvania's statute of limitations.[3]

## II.

As our late colleague Judge Max Rosenn aptly noted in

[3.] After a jury trial, the District Court entered summary judgment in favor of defendants Philadelphia Geriatric Center and BOngiorno. Miller did not appeal from this order and, as such, Philadelphia Geriatric Center and Bongiorno are not parties to this appeal.

*Hughes v. United States*, 263 F.3d 272, 273 (3d Cir. 2001), "determining when the statute of limitations begins to run in a case is sometimes difficult, especially in cases claiming medical malpractice." This is particularly so where, as here, Miller brings both survival and wrongful death claims under the FTCA as well as survival and wrongful death claims pursuant to Pennsylvania law all based on the alleged medical malpractice of the appellees. We turn first to the FTCA claims.

A.    The Federal Tort Claims Act

Under the FTCA, a claim against the United States is barred unless it is presented to the appropriate federal agency "within two years after such claim accrues." 28 U.S.C. § 2401(b). The determination of when a claim accrues for the purposes of the FTCA is a question of federal law. *Tyminski v. United States,* 481 F.2d 257, 262-63 (3d Cir. 1973). The District Court's factual findings regarding the date on which Miller's

10

claims accrued will remain undisturbed unless its findings are clearly erroneous. *Anderson v. City of Bessemer*, 470 U.S. 564, 573, 105 S. Ct. 1504, 1511; 84 L. Ed.2d 518, 528 (1985). Our review is plenary, however, where the District Court's determinations involve the application and interpretation of legal precepts. *D&G Equip. Co. v. First Nat'l Bank*, 764 F.2d 950, 954 (3d Cir. 1985).

The FTCA is a limited waiver of the sovereign immunity of the United States. The Supreme Court has admonished that the courts should carefully construe the time limitations of the FTCA so as not to extend that limited waiver beyond that which Congress intended. *United States v. Kubrick,* 444 U.S. 111, 117-18, 100 S. Ct. 352, 356-57, 62 L. Ed.2d 259 (1979). Normally, a tort claim accrues at the time of injury. *Gonzalez v. United States,* 284 F.3d 281, 288 (1st Cir. 2002). However, in *Kubrick,* the Supreme Court carved out a "discovery rule" exception for

11

FTCA claims involving medical malpractice. *Kubrick*, 444 U.S. at 111. Such claims, therefore, accrue not at the time of injury, but rather when a plaintiff knows of both the existence and the cause of his injury. *Id.* at 119-122. Importantly, however, accrual does not await the point at which a plaintiff also knows that the acts inflicting the injury may constitute medical malpractice. *Id.* at 122.

B.     FTCA Wrongful Death Claims

Before calculating the time limitations for Miller's federal claims, we must first address an issue she has raised concerning the actual characterization of her claims. In her brief, she argues that the District Court failed to recognize that she was bringing both survival and wrongful death claims, presumably in her capacity as the administratrix of her brother's estate. She argues that the majority of the District Court's discussion of the FTCA claims focused on negligence. *See e.g.,*

12

District Ct. Op. at 8 ("Therefore, the cause of action against the United States alleging the negligence of Moreno, accrued at the latest by December 1995 . . .").

In determining whether a wrongful death claim is distinct from a survival claim, we look to state law. *Miller v. United States*, 932 F.3d 301, 303 (4th Cir. 1991) ("[S]tate law determines whether there is an underlying cause of action; but federal law defines the limitations period and determines when that cause of action accrued."); *see also Chomic v. United States*, 377 F.3d 607, 611 (6th Cir. 2004). The wrongful death action is distinct from a survival action under Pennsylvania law. 42 PA. CONS. STAT. Section 8302.[4] Pennsylvania law creates

---

[4.] A survival action is a continuation of the personal injury action held by the decedent at the time of his or her death and may be brought by the personal representative of their estate. *See Moyer v. Rubright*, 651 A.2d 1139, 1140 (Pa. Super. Ct. 1994); *Pastierik v. Duquesne Light Co.*, 526 A.2d 323, 326 (Pa. 1987).

an "independent" cause of action for wrongful death. 42 PA. CONS. STAT. Section 8301. An "independent" wrongful death action is one which is created for the benefit of and is held by statutorily specified survivors and is intended to compensate them for the pecuniary loss suffered because of the decedent's death. Put another way, the action remedies the loss sustained by the survivors who are deprived of the decedent's earnings, companionship, etc.[5] We agree that the District Court's opinion

---

[5.]A wrongful death action under Pennsylvania law does have a distinct curiosity to it. While technically an independent cause of action, Pennsylvania wrongful death actions are, in some sense, derivative. While not derivative of the decedent's personal injury action, such causes of action have been deemed derivative of the original tort which resulted in injury and eventual death. Therefore, if, on the date of the decedent's death, the statute of limitations had run on the underlying tort, his survivors are barred from bringing a wrongful death claim. *See Moyer v. Rubright*, 651 A.2d 1139, 1142-43 (Pa. Super. Ct. 1994); *Baumgart v. Keene Bldg. Prod. Corp.*, 633 A.2d 1172, 1176 (Pa. Super. Ct. 1993); *Ingenito v. AC&S Inc.*, 633 A.2d 1172, 1176 (Pa. Super. Ct. 1993); *Anthony v. Koppers*, 436 A.2d 181, 185 (Pa. 1981). However, if the survivors can bring a wrongful death claim, the statute of limitations begins to run on

14

does appear to conflate Miller's claims. Miller pleaded "negligence" - nothing more specific than that. However, while she has not clearly delineated her claims, she is correct in pointing out that the federal rules of pleading require only that a plaintiff set forth a "short and plain statement" of his claim for relief. Fed.R.Civ.P. 8(a)(2). Moreover, under the rules, "(a)ll pleadings ... (are to) be so construed as to do substantial justice." Fed.R.Civ.P. 8(f). Pleadings need not be construed most strongly against the pleader, rather we should make a determined effort to understand what she is attempting to set forth.

The complaints filed in this matter demonstrate that Miller was indeed alleging a wrongful death claim in addition to

---

the date they sustain the pecuniary loss, i.e., the date of the decedent's death. *Moyer*, 651 A.2d at 1142.

15

her survival action. For example, her complaint naming the United States as a defendant alleges that the defendant's actions "caused the decedent to endure pain and suffering and contributed to the cause of his untimely death." Plaintiff's complaint at 4, ¶ 20. Further, her "Claim for Damage, Injury, or Death" filed with the United States Department of Health and Human Services indicates that she "seeks compensation and damages related to the death of Henry Miller." App. at 69a. The letter from counsel accompanying the filing of this form additionally makes it clear that Miller was making a wrongful death claim ("we are submitting this wrongful death claim . . ."). App. at 71a. Having determined that Miller has pleaded a separate wrongful death action under the FTCA, we now must determine if that claim is timely.

As noted earlier, the accrual date for wrongful death claims brought under the FTCA is determined under federal

16

law. *See e.g. Miller*, 932 F.3d at 303; *Chomic*, 377 F.3d at 611. Where a state statute creates such an independent cause of action, it cannot accrue for FTCA purposes until the date of death, which gives rise to the underlying action. *Fisk v. United States*, 657 F.2d 167, 171 (7th Cir. 1981) (holding that while state law created the wrongful death cause of action, the accrual question was one of federal law); s*ee also Warrum v. United States,* 427 F.3d 1048, 1052 (2005) (re-affirming that for purposes of the FTCA, because Indiana law creates a wrongful death claim substantively independent of the personal injury claim possessed by the decedent before death, the wrongful death claim cannot accrue until the date of the decedent's death)).

We now join those circuits that have concluded, albeit under a wide variety of factual scenarios, that wrongful death claims, for FTCA purposes, cannot accrue prior to death. *See*

17

*e.g., Warrum*, 427 F.3d at 1051; *Johnston v. United States,* 85 F.3d 217 (5th Cir. 1996); *Washington v. United States*, 769 F.2d 1436 (9th Cir., 1985); *Fisk*, 657 F.3d at 167. Here, Henry Miller died on September 24, 1997, and his sister filed her wrongful death action against the United States on September 21, 1999. Because Miller brought her wrongful death action within two years of the decedent's death, her claims are timely.

C.      FTCA Survivor Claims

Miller further claims that the District Court erred by holding her survival claims against the United States and Markowitz to be time barred. These claims were also brought under the Federal Tort Claims Act. *See* 42 U.S.C. § 2401(b).

The same two dates are once again at issue here: October 31, 1995 – the date when the doctors at the Franklin Hospital informed Miller of the cause of her brother's health problems,

18

and September 24, 1997, the date of his death. Miller again argues that the statute of limitations begins to run on the date of her brother's death. The Government asserts that the claims accrued when Miller knew of both the existence and the cause of Henry's injury, October 31, 1995. Relying on this date would render Miller's claims time-barred. If the date of accrual is the date of the decedent's death, however, Miller's claims are timely. The District Court concluded that October 31, 1995 was the date the claims accrued because it was on this date that Miller knew both the cause and existence of her brother's illness. Miller argues that the District Court erred by looking to *her* rather than to the *decedent* as the proper person to whom the reasonable person standard of the FTCA discovery rule applies. We agree.

The record is quite clear that, although Miller closely monitored her brother's health and treatment, she was not his legal guardian. Even though she was not his legal guardian, the

19

District Court nonetheless looked to Miller to determine when any lawsuit should have been filed. This was error. Miller would not have had the authority to file a suit on the decedent's behalf while he was alive unless she was appointed his guardian. Hence, the District Court's discussion of what Miller knew or what a reasonable person with Miller's knowledge should have known is irrelevant to a determination of when the statute of limitations ran.

We are left to look at what the decedent Henry Miller knew or what a reasonable person with the decedent's knowledge should have known. But this is problematic. As noted earlier, the decedent was mentally impaired, with the approximate mental age of a four year old child. In deciding not to look to Henry's knowledge, the District Court recognized the difficulty presented:

> Admittedly, for purposes of determining the date
> upon which the statute of limitations commences
> in a survival action, one inquiry is when the

20

> decedent became aware of his injury and its cause. Although it is unclear what decedent was specifically told about his injury and it is clear that someone suffering from mental retardation to the extent that he was would be unable to comprehend whatever he was told about his injury and its cause
>
> . . .

District Ct. Op. at 8 (*citing Barren v. United States,* 839 F.2d 987

(3rd Cir. 1988)).

On first blush it would seem that, as *Kubrick* instructs, we should apply the objective reasonable person standard to Henry Miller to determine when he should have known of his injury. *See Kubrick*, 444 U.S. at 111, 100 S.Ct. at 360. In *Kubrick*, the Supreme Court made no exception to the discovery rule for persons suffering from a mental illness and so it would seem that it should control here. However, *Kubrick* is not absolute in its application. A consistent but narrow exception to the *Kubrick* rule has been carved out by a number of courts of appeal for situations in which the plaintiff has no culpability in failing to

bring a timely claim. *See Clifford by Clifford v. United* States, 738 F.2d 977 (8th Cir, 1984); *Washington v. United States*, 769 F.2d 1436 (9th Cir. 1985). After all, the Court in *Kubrick* was clearly concerned with the plaintiff who "armed with the facts about the harm done to him, can protect himself by seeking advice in the medical and legal community." *Kubrick*, 444 U.S. at 123, 100 S.Ct. at 360. The objective standard the Court adopted sought to enforce this maxim.

In *Barren*, over a vigorous dissent, we applied the *Kubrick* objective standard, refusing to carve out any exception for a plaintiff whose ability to perceive that the government injured him was destroyed by the government's own actions. The plaintiff in *Barren* was initially competent, although he suffered from serious mental illness, but he was rendered completely incompetent through the government's malfeasance in attempting to treat his mental conditions. In applying the *Kubrick* objective

22

standard to the plaintiff, we noted that allowing persons with mental illnesses to file suit later than the objectively reasonable person would be "tantamount to ruling that a plaintiff's mental infirmity can extend the statute of limitations," and that "[s]uch extensions have been uniformly rejected by this and other courts of appeals." *Barren*, 839 F.2d at 992. We also refused to consider the effect of a delay in the appointment of a guardian, stating that "[t]here is no reason why such a delay in the appointment of a guardian should work to the detriment of the Government." *Id*. at 991 n.7.

Our reluctance in *Barren* to allow the plaintiff an exception to the *Kubrick* objective standard stemmed from the concern that plaintiffs who were injured by the government could then attempt to take advantage of the "exception" by arguing about when they became incompetent. In other words, the court did not want disputes over when a plaintiff became incompetent

23

to overtake or subsume the objective reasonable person standard in *Kubrick* - especially when the Government was the cause of the injury that led to the incompetency. *Barren*, 839 F.2d at 991. Additionally, we refused to address the effect of a lack of a guardian for fear that "[a] deliberate delay" in appointing one might also encourage extending the statute of limitations to the government's detriment.

However, on its facts, *Barren* addresses only the specific class of plaintiffs who were not only injured by the government, but were also prevented from recognizing their injuries by the government's malfeasance and we do not find its logic controlling here. Miller's incapacity was not caused by the Government's malfeasance. Instead, he was born totally incompetent and remained so his entire life. Consequently, the concerns suggested in *Barren* are simply not implicated here. The Government did not cause Miller's retardation, although

24

they did injure him.  Thus, because Miller's mental retardation predated the government's negligence, there can be no concern that finding *Kubrick* inapplicable here will encourage disputes over when a plaintiff was rendered incompetent.  Nor might it facilitate the intentional delay in appointing a guardian because, again, plaintiffs in Miller's position are incompetent before the government's negligence occurs.

To reiterate, we are not dealing with a person who, like in *Barren*, was mentally ill but competent and then, because of the government's malpractice, progressed into total mental incapacity.  Henry Miller, from his birth to his death, possessed the intellectual ability of a four year old.  His profound disability predating the government's malfeasance places him outside the purview of *Barren* and into somewhat uncharted waters.  Analogous to Henry Miller's position, and instructive for the resolution  of this case, we believe that his position most closely

25

resembles a plaintiff who is a legal minor.

For minors, it is of course true that in most situations the *Kubrick* objective standard unequivocally applies. *See Crawford v. United States*, 796 F.2d 924 (7ᵗʰ Cir. 1986). But, minors are not subject to the *Kubrick* objective standard because they are thought to be capable of recognizing their injury and thus should be held responsible for investigating its cause, which is the justification that underlies *Kubrick*. Rather, minors are subject to *Kubrick's* standard because we look to their parent or legal guardian. That is, we impute to their parents or guardian the knowledge of their injury. We do this precisely because a legal minor is not in a position to either understand her injuries or even to bring a claim if she wanted to. It follows that, in the rare instance where a minor did not have either a parent or a guardian, the *Kubrick* standard should not be applied to them because there would be no one to whom we could impute knowledge and, also

because the minor herself could not have understood, let alone brought, the claim.  Here, we are essentially dealing with a minor — an individual who is so severely mentally incapacitated that his intelligence equates to that of a four-year-old child.  Moreover, this "minor" lacked an appropriate legal guardian.  Accordingly, we will not apply the *Kubrick* objective standard to this plaintiff.

Having determined that *Kubrick's* standard does not apply, we now turn to a determination of when the claims accrued.  We find instructive a class of cases — the coma cases — identified by Judge Becker in his dissenting opinion in *Barren*.  For example, in *Clifford v. United States*, the Court of Appeals for the Eighth Circuit held that the statute of limitations accrued when Clifford's father was appointed his guardian and not, as the government had argued, when Clifford fell into a coma.  *Clifford*, 738 F.2d 977.  Specifically, the court held that

27

because Clifford had reached the age of majority, and had not yet had a guardian appointed on his behalf, the knowledge of his family members could not be imputed to the plaintiff himself. *See Barren*, 839 F.2d at 997 (*citing Clifford*, 738 F.2d at 980).

Also citing *Clifford,* the Court of Appeals for the Ninth Circuit, in *Washington v. United States*, held that a cause of action accrued on the date when a comatose patient died, not on the date she entered into a fourteen-year coma. *Washington*, 769 F.2d at 1439. The court reasoned that because the plaintiff was never aware of her injury or its cause, the statute of limitations began to run on the date of her death. *Id.* at 1438. Further, the court found the knowledge of the plaintiff's husband irrelevant to her ability to file suit. *Id.*

Henry Miller presents a legal situation akin to those plaintiffs in *Clifford* and *Washington*. Not only was no guardian ever appointed for him, his profound mental retardation

28

prevented him from any awareness of his injury or its cause. The objective reasonable person inquiry annunciated by the Supreme Court in *Kubrick* does not apply here. Assuredly, had Vicki Miller been appointed legal guardian for her brother at some time before the  government's alleged malpractice, *Kubrick* would most likely apply.  Admittedly, Henry Miller's legal position is a unique one, and our holding in this appeal is narrow as a result. However, we are certainly not alone among those courts which have carved a narrow equitable exception to *Kubrick's* reasonable person standard for mentally incapacitated persons who, for whatever reason, do not have a legally appointed guardian to act in their stead.  *See Clifford*, 738 F.2d at 977; *Washington*, 769 F.2d at 1439; *Zeidler v. United States*, 601 F.2d 527 (10th Cir. 1979).   We will therefore reverse the grant of summary judgment on Miller's FTCA survival claims.

### III.

29

Miller also brings survival and wrongful death claims under Pennsylvania law. She again asserts that the statute of limitations for the state law survival claim against Dr. Markowitz did not begin to run until the decedent's death. She also asserts that there were genuine issues as to when the statute of limitations began to run. We agree that there are genuine issues of material fact as to when Miller's state law survival claims against Markowitz accrued.

Under the Pennsylvania discovery rule, the statute of limitations begins to run when the complaining party "knows, or reasonably should know (1) that he has been injured, and (2) that his injury has been caused by another party's conduct." *Bohus v. Beloff*, 950 F.2d 919, 924 (3d Cir. 1991). A plaintiff need not know the exact medical cause of the injury, that his injury is due to another's negligent conduct or that he has a cause of action. *Id.* at 925. The "polestar" of the discovery rule is not the

plaintiff's actual knowledge, but rather "whether the knowledge was known, or through the exercise of diligence, knowable to [the] plaintiff." *Id.* (citing *O'Brien v. Eli Lilly & Co.*, 669 F.2d 704, 711 (3d Cir. 1981)); *see also Vitalo v. Cabot Corp.*, 399 F.3d 536, 545 (3d Cir. 2005) (reiterating that plaintiffs must exercise reasonable diligence to invoke the "safe harbor" of the discovery rule).

Consequently, Pennsylvania's discovery rule is objective. Statutes of limitations are generally strictly construed because their exclusive purpose is to expedite litigation and discourage stale claims so the defendant will not be prejudiced by having to locate evidence and witnesses to defend a long-passed wrong. *Gustine Uniontown Assocs. v. Anthony Crane Rental, Inc.*, 842 A.2d 334, 346 (Pa. 2004). Because the discovery rule tolls the otherwise strict application of the statute of limitations, diligence is evaluated under the reasonable person standard. It matters not

what the particular plaintiff actually knew, but what he reasonably should have known. Until recently, no adjustments to this objective analysis were made for mental illness. *See Lake v. Arnold,* 232 F.3d 360, 371 (3d Cir. 2000) (citing *Walker v. Mummert*, 146 A.2d 289, 291 (Pa. 1958); *Pearce v. Salvation Army*, 674 A.2d 1123, 1126 (Pa. Super. Ct. 1996). However, under a recent Pennsylvania Supreme Court decision, "[w]hile reasonable diligence is an objective test, it is sufficiently flexible to take into account the differences between persons and their capacity to meet certain situations and the circumstances confronting them at the time in question." *Fine v. Checcio*, 870 A.2d 850, 858 (Pa. 2005) (citing *Crouse v. Cyclops Indus.*, 745 A.2d 606, 611 (Pa. Super. Ct. 2000) (internal citations omitted)). "Under this test, a party's actions are evaluated to determine whether he exhibited 'those qualities of attention, knowledge, intelligence and judgment which society requires of its members

32

for the protection of their own interest and the interest of others.'" *Id*.

Whether a damaged party, exercising reasonable diligence, could ascertain that he has been injured, and by what cause, is a factual determination. As discussed earlier, the decedent's knowledge is relevant for the survival claim because it is his claim that survives his death brought by his personal representative due to his decease. *Carroll v. Avallone*, 869 A.2d 522, 528 (Pa. Super. Ct. 2005) (citing *Kiser v. Schulte*, 538 A.2d 219 (Pa. 1994). We believe that because the decedent had the mental age of a four-year-old, this is a "difference between persons" that must be taken into account under *Fine v. Checcio,* 870 A.2d 850, 858 (Pa. 2005), to determine whether the decedent knew, or, more accurately, was even capable of knowing, that he was injured and the cause of his injury. Because this presents a genuine issue of a material fact, we will reverse the grant of

33

summary judgment on Miller's state law survival claim.

Miller also asserts that the District Court erred by failing to recognize the state law wrongful death component of her claims. We agree. Generally, the right of action for wrongful death shall exist only for the benefit of the spouse, children, or parents of the deceased. *See* 42 PA. CONS. STAT. § 8301(b). However, a wrongful death action may also be brought by the personal representative of a decedent to recover damages for reasonable hospital, nursing, medical, funeral expenses and expenses of administration necessitated by reason of injuries causing death. *See* 42 PA. CONS. STAT. § 8301(d). Hence, Miller, as administratrix of her brother's estate, is a proper party to bring this claim. *Carroll v. Avellone,* 869 A.2d 522, 528 (Pa. Super. Ct. 2005) (citing *Commonwealth v. Opperman*, 780 A.2d 714 (Pa. Super. Ct. 2001).

The decedent's wrongful death actions accrued on

34

September 24, 1997, the date of his death.  *See Gallick v. United States*, 542 F. Supp. 188, 191 (1982).  It is undisputed that the statute of limitations is two years for wrongful death actions.  42 PA. CONS. STAT. § 5524(2).  Therefore, Miller's wrongful death claims filed on September 21, 1999 were timely.  Accordingly, we will reverse the grant of summary judgment on Miller's wrongful death claims.

## IV.

The Judgment of the District Court is reversed and this matter is remanded for further proceedings consistent with this opinion.

SMITH, <u>Circuit</u> <u>Judge</u>, *dissenting*.

I respectfully dissent from the majority's conclusion that Vicki Miller's survival action against the United States pursuant to the Federal Tort Claims Act (FTCA) is not time-barred. In my view, we are bound by the Supreme Court's decision in *United States v. Kubrick*, 444 U.S. 111 (1979), and this Court's decision in *Barren by Barren v. United States*, 839 F.2d 987 (3d Cir. 1988), to apply an objective test in determining when the statute of limitations began to run on Miller's survival claim under the FTCA. Because *Barren* applied the objective test and refused to toll the statute even though the government's negligence aggravated the plaintiff's mental illness to such an extent that he was unable to perceive that he had been injured, there is no basis to create an exception which would allow tolling here where Henry Miller's inability to recognize the fact that he had been injured was not attributable to the government's conduct.

36

The majority ignores *Kubrick*'s admonition that the FTCA's statute of limitations must be narrowly construed in order to avoid "extend[ing] the waiver [of sovereign immunity] beyond that which Congress intended." 444 U.S. at 118. Furthermore, the majority misreads *Barren* en route to creating an exception to *Kubrick*'s objective test which allows tolling for a mentally incapacitated adult if the record fails to establish that he has an appointed guardian. The lack of an appointed guardian is not an exception to *Kubrick*'s objective test, and I have found no case law that would support creating such an exception. For that reason, I write separately to explain why the objective reasonable person standard applied in *Kubrick* and *Barren* is controlling and compels the conclusion that the District Court correctly dismissed Miller's FTCA survival claim as time-barred.

I also disagree, for the reasons explained below, with the

37

majority's determination that the District Court improperly dismissed Vicki Miller's state law survival action against Dr. Markowitz, and that it conflated her wrongful death claims with her survival actions.

I.

The facts set forth by the majority are not in dispute. The decedent, Henry Miller, was born severely retarded in 1933 and attained the mental age of a four year old. In his mid-fifties, Henry was placed in a community living arrangement and his sister, Vicki Miller, regularly visited him. Due to a toxic Lithium level, Henry became seriously ill in 1995. His sister was "repeatedly advised that her brother's condition was caused by an adverse reaction to the combination of medication that had been prescribed . . . ." Maj. op. at 5. Despite treatment, Henry

did not recover, and he died on September 24, 1997.

Vicki Miller filed suit on September 21, 1999. Pursuant to the FTCA, Miller asserted a survival action against the United States. The question is: when did Miller's survival action accrue - in October of 1995 when she learned of the cause of her brother's injury - or in September of 1997 when he died?

The majority determines that the survival claim accrued when Henry died in September of 1997. I disagree. My analysis leads me to conclude that Vicki Miller's survival claim accrued when Henry was hospitalized in 1995 and she was repeatedly informed that his illness was caused by a reaction to his medication. In my view, the majority disregards the Supreme Court's teaching in *Kubrick* and misapplies this Court's decision in *Barren*.

A.


In *United States v. Kubrick*, 444 U.S. 111 (1979), the

Supreme Court determined that an FTCA claim accrues when the

plaintiff knows both the existence of his injury and who has

caused the injury. *Id.* at 123. *Kubrick* established the general

rule - which the majority acknowledges - that the inquiry is an

objective one requiring a determination of whether a reasonable

person should have known of the injury and who caused it. *See*

*Barren by Barren v. United States*, 839 F.2d 987, 990 (3d Cir.

1988) (discussing Supreme Court's analysis in *Kubrick*).


In *Barren*, the plaintiff, a veteran, suffered a service-

related mental disability. 839 F.2d at 987. Although he sought

treatment from the Veterans Administration (VA) in 1973, he

was advised that his mental infirmity was not service-related and

40

he was denied admission for in-patient treatment. Recognizing that Barren needed treatment, his sister, Henrietta, and his family sought alternate treatment in several private facilities in 1974. In October of 1977, the VA reversed its prior determination that Barren's mental condition was not service-related and awarded him a partial disability, subsequently increasing his disability to 100 percent. In September of 1979, Henrietta filed two FTCA claims, one on behalf of her brother and the other in her own right, seeking reimbursement for medical expenses she incurred on her brother's behalf. She alleged that the VA had negligently failed to admit her brother for in-patient treatment and that its psychiatric treatment was substandard. Henrietta was not appointed her brother's guardian, however, until June of 1981.

The District Court dismissed Henrietta's claim as untimely. Barren's FTCA claim, the District Court ruled, was

41

viable because his diminished mental capacity, caused by the VA's negligence, had prevented him from appreciating the fact that he had been injured. After conducting a bench trial, the District Court found that the VA was negligent and awarded damages to Barren.

The United States appealed. It did not dispute that its negligence had caused Barren's inability to perceive his injury. Rather, the VA asserted that Barren's claim was time-barred and that the District Court erred by considering Barren's mental infirmity instead of applying *Kubrick*'s objective standard. The *Barren* majority viewed Barren's sister, even though she was not a guardian at the relevant time, as an objectively reasonable person. 839 F.2d at 991. It concluded that, in light of the fact that Henrietta and Barren's family sought alternate treatment for Barren in 1974, a reasonable person should have known at that

42

time that the VA's care was inadequate and that Barren had been harmed by the VA's refusal to admit him for treatment. The question was whether Barren's mental infirmity was a factor in the determination of when his claim accrued.

The *Barren* panel agreed that *Kubrick*'s objective test generally controls the determination of when a FTCA claim accrues. The panel also agreed that an individual's mental infirmity is not a factor that may be considered under *Kubrick*'s objective test. 839 F.2d at 995 (Becker, J., dissenting) (noting agreement with the majority that the "general rule" is that *Kubrick*'s objective test governs the determination of when a statute of limitations begins to run and that tolling is not permitted "by reason of infancy or mental disability"). Even though dissenting, Judge Becker vigorously argued for a narrow exception in which the statute of limitations is tolled for "a

plaintiff whose ability to perceive that the government injured him was destroyed by the government's negligent care until the plaintiff is affirmatively informed of the injury in a way he can understand, or until a guardian is appointed." *Id.*

As support for this narrow exception, Judge Becker relied on two cases presenting FTCA claims on behalf of adults who suffered from a coma induced by the government's negligence, and who, because of their mental incapacity, were unable to recognize that they had been injured. *Id.* at 997 (discussing *Clifford by Clifford v. United States*, 738 F.2d 977 (8th Cir. 1984), and *Washington v. United States*, 769 F.2d 1436 (9th Cir. 1985)). As a result of the plaintiffs' inability to detect that they were injured, the FTCA claims in these two coma cases were filed beyond the two year limitations period. Although the government argued that the claims were time-barred, in each case

44

the Court determined that the claim did not accrue until either a guardian was appointed, *Clifford*, 738 F.2d at 980, or the plaintiff died, *Washington*, 769 F.2d at 1439. The *Clifford* Court pointed out that it was presented with more than just a plaintiff suffering from a mental infirmity. 738 F.2d at 979-980. Rather, the government's conduct caused both the mental infirmity *and* the inability to perceive that he had sustained an injury. This extraordinary situation warranted tolling the statute of limitations because tolling prevented the government from profiting from its own wrong. *Clifford*, 738 F.2d at 980; *Washington*, 769 F.2d at 1439 (following *Clifford*). Consistent with this analysis, Judge Becker stressed that he advocated for the exception "not because of Barren's mental incompetency *simpliciter*, but because of the government's conceded participation in Barren's inability to perceive his injury." *Id.* at 1000.

45

Although the *Barren* majority found that Barren's injury, and the reason for his inability to recognize the same, were a "compelling reason to excuse" Barren's untimely claim, it concluded that "*Kubrick* makes clear[] the rule cannot be subjectively applied." 839 F.3d at 992; 994 (Sloviter, J., concurring) (acknowledging that "fairness requires that we relax the rule," but that "is an issue for Congress"). To allow Barren to file later than an objectively reasonable person, we explained, "would be tantamount to ruling that a plaintiff's mental infirmity can extend the statute of limitations." *Id.* at 992, 994 (Sloviter, J., concurring) (finding that inclusion of plaintiff's mental disability "interposes an impermissible subjective element into the reasonable person standard"). Mindful that "limitations periods must be strictly construed, especially those involving a waiver of sovereign immunity," the *Barren* majority refused to embrace the exception urged by the dissent. *Id.* As a result,

irrespective of the fact that the government's negligence caused

Barren's inability to perceive that he had been injured,  Barren's

case was viewed and resolved on the basis that it involved a

mental infirmity, nothing more.  Because Barren's FTCA claim

was filed after the two year limitations period, the majority

determined it was time-barred.

B.

In my view, *Barren* governs this case.  The facts are

nearly identical.[6]  In *Barren,* the FTCA action was filed on behalf

---

[6.]It is true that the nature of Henry's mental incapacity is distinguishable to a degree from that suffered by Barren and that, as the majority notes, "Henry's position most closely resembles a plaintiff who is a legal minor." Maj. op. at 26. This difference, however, is irrelevant for purposes of this appeal. Infancy does not toll the statute, and Henry's similarity to that of a minor requires application of  the objective reasonable person test.  *Barren*, 839 F.2d at 995 (Becker, J., dissenting) (agreeing with the majority that the two year limitations period

47

of an adult who suffered from a mental disability such that it prevented him from recognizing that he had been injured at the hands of the government. Although Barren's mental infirmity was substantial, he lacked a legal guardian at the time he was negligently treated. His sister, however, was aware of the facts regarding his condition, his unsuccessful attempts to obtain treatment from the VA, and that, as a result of the VA's refusal to treat him, she and her family had to obtain treatment for her brother elsewhere. These facts, the *Barren* majority concluded, were sufficient to demonstrate that a reasonable person should have known in 1974 that Barren was injured by the VA's substandard care.

Similarly, in this case, we are presented with an FTCA

---

for FTCA claims is not tolled by reason of one's infancy).

claim filed on behalf of an adult, Henry Miller, who suffered from a mental disability that prevented him from recognizing that he had been injured as a result of the government's conduct. As in *Barren*, the disabled party's sister, here Vicki Miller, was not his guardian at the time he suffered an injury as a result of the government's negligence. Nor was she his guardian before this FTCA suit was filed, a fact that also parallels *Barren*. Vicki Miller, who regularly visited her brother, was aware of her brother's longstanding mental incapacity, his sudden physical illness requiring hospitalization, the cause of his illness, and the course of his medical treatment.

Because the facts in this case are nearly identical to those in *Barren*, I cannot accede to the majority's view that *Barren* is not controlling because it "addresses only the specific class of plaintiffs who were not only injured by the government, but were

also prevented from recognizing their injuries by the government's malfeasance . . . ." Maj. op. at 24-25. *Barren*, contrary to the majority's reading, treated this very class of plaintiffs in the same fashion as any other plaintiff suffering from a mental infirmity which precluded that person from recognizing that he had been injured at the hands of the government. *See Barren*, 839 F.2d at 996 (Becker, J., dissenting) (emphasizing that the *Barren* majority's decision "ignores the added special factor of the government's participation in Barren's inability to comprehend his injury and its cause"). Indeed, *Barren* explicitly rejected the argument that the government's connection with the plaintiff's inability to perceive his injury warranted an exception to the application of *Kubrick*'s objective test. In short, the "difference" between *Barren* and the instant case is that in the former, the circumstances favoring an exception to *Kubrick* were more compelling than those before us. Still, this Court in *Barren*

50

declared that *Kubrick*'s objective reasonable person test governed the timeliness of Barren's FTCA claim regardless of the nature or cause of the plaintiff's mental incapacity.

Thus, in my view, the District Court correctly applied *Kubrick*'s objective test, as we did in *Barren,* without regard to the nature or cause of Henry Miller's mental incapacity. Because a reasonable person, like Vicki Miller, was aware of Henry's condition, his sudden illness and the cause of his demise more than two years before the filing of this suit in 1999, Miller's FTCA survival action should be time-barred.

The majority further misapplies *Barren* by reasoning that Vicki Miller's knowledge was "irrelevant to a determination of when the statute of limitations ran" because she was not his guardian. Maj. op. at 20. The Court in *Barren* instructed that,

51

in deciding when the limitations period begins to run, the critical inquiry is what an objectively reasonable person should have known. 839 F.2d at 991. To that end, we viewed Barren's sister, Henrietta, as an objectively reasonable person, not because she had been appointed Barren's guardian years after the negligence occurred, but because she was familiar with the circumstances surrounding her brother's treatment over the years.[7] 839 F.2d at 991, and at 994 (Sloviter, J., concurring) (applying the reasonable person standard and noting that the only distinction between plaintiff and his sister was his mental incapacity). In fact, in viewing Barren's sister as an objectively reasonable person, we attached little, if any significance, to the fact that she was

---

[7.]Restatement (Second) of Torts, § 283 comment c (1965) (stating that the "reasonable man is a fictitious person"); and comment d (explaining that the "qualities of a reasonable man which are of importance differ with the various situations . . . [and] are those which are necessary for the *perception of the circumstances existing at the time* of his act or omission) (emphasis added).

appointed Barren's guardian. We acknowledged that a guardian's knowledge may be imputed to the incapacitated person, 839 F.2d at 991 n.7, but we rejected the argument that the lack of a guardian "could allow an incompetent plaintiff to circumvent the statute of limitations." *Id.* Thus, *Barren* taught that guardianship status is not determinative of whether the knowledge a person possesses is on a par with that of the objectively reasonable person. Restatement (Second) of Torts § 283 comment c (1965). For that reason, I cannot agree with the majority that the District Court erred by viewing Vicki Miller as an objectively reasonable person for purposes of ascertaining when Miller's FTCA survival action accrued.

The majority, however, finds the fact that Henry lacked a guardian to be of critical importance. It reasons that Henry's situation is like that of the plaintiffs in the two coma cases

identified by Judge Becker in his dissent in *Barren*, 839 F.3d at 997 (discussing *Clifford*, 738 F.2d at 979-80, and *Washington*, 769 F.2d at 1436). Because the statute of limitations was tolled for those plaintiffs, who like Henry suffered from a mental disability and lacked guardians, the majority concludes that the statute should also be tolled for Henry.

In my view, these two coma cases are distinguishable in several important respects. In *Clifford* and *Washington*, as in *Barren*, the determination of when the FTCA claims accrued involved more than just a consideration of the plaintiffs' mental infirmity. *Clifford*, 738 F.2d at 980; *Washington*, 769 F.2d at 1439; *see also Barren*, 839 F.2d at 996 (Becker, J., dissenting) (explaining that this case involved more than a mere mental incapacity). In these cases, there was a mental infirmity caused by the government *plus* the fact that the mental infirmity caused

54

by the government's negligence prevented the plaintiff from appreciating that he had been injured and by whom. In light of these circumstances and the fact that these formerly competent adults had no one to represent their interests, the Courts of Appeals for the Eighth and Ninth Circuits concluded that their FTCA claims did not accrue until either a guardian was appointed or the plaintiff died.[8] *See Barren*, 839 F.2d at 997 (discussing *Clifford*, 738 F.2d at 979-80, and *Washington*, 769 F.2d at 1438). Under those extraordinary circumstances, tolling was appropriate, as the *Clifford* Court explained, to prevent the government from profiting from its own wrong. 738 F.3d at 980.

---

[8.] The majority does not explicitly state when Miller's FTCA survival claim accrued. Inasmuch as the majority explains that the coma cases are instructive and that "Henry Miller presents a legal situation akin to those plaintiffs in *Clifford* and *Washington*," maj. op. at 29, and because the record does not indicate that Henry had a guardian, I must assume that the majority determines that Miller's claim accrued on Henry's date of death.

Indeed, the *Clifford* Court pointed out that its holding was limited to the "rare situation where the alleged malpractice itself (and not some preexisting mental condition unconnected with the government) has prevented the claimant from ever obtaining that knowledge." *Id.* Thus, tolling was not warranted simply because these mentally incapacitated adults had no guardian.

Unlike the plaintiffs in *Clifford* and *Washington*, Henry Miller was not competent at any point in time before the government's conduct caused his Lithium to reach a toxic level. Henry was born severely retarded and attained the mental age of a four year old. As a result, the government's negligent conduct neither caused nor aggravated Henry's mental infirmity and Henry's inability to recognize his injury was not attributable to the government's conduct. Thus, application of *Kubrick*'s objective test here would not allow the government to profit from

56

its own wrong.  In short, we are not confronted with the extraordinary circumstances present in *Clifford* and *Washington*, where the government's conduct is the reason that the plaintiff was unable to perceive his injury and timely initiate suit.  For that reason, I do not believe that these two cases support creating an exception in the case *sub judice* to the FTCA's statute of limitations, which would allow tolling simply on the basis that this record fails to establish that Henry had a guardian in the latter years of his life.

Indeed, in *Barren*, we explicitly rejected the concept that the lack of a guardian for a mentally infirm adult plaintiff could toll the statute of limitations.  We observed that "[a] deliberate delay in the appointment of a guardian, under plaintiff's view of the statute of limitations, could allow an incompetent plaintiff to circumvent the statute of limitations."  839 F.2d at 991 n.7.  We

57

declared that "[t]here is no reason why such a delay in the appointment of a guardian should work to the detriment of the government." *Id.* My research has failed to unearth any case law holding that the absence of a guardian, without more, warrants tolling the FTCA's statute of limitations for a mentally incapacitated plaintiff.

In my view, this novel exception created by the majority in the absence of truly extraordinary circumstances like those in the coma cases not only lacks any legal support, it erodes the well-settled rule that the FTCA's two year limitations period is not tolled by reason of mental incapacity. As a result, this exception fails to heed the Supreme Court's admonition that the FTCA's limitations period must be carefully construed to avoid "extend[ing] the waiver [of sovereign immunity] beyond that which Congress intended." *Kubrick*, 444 U.S. at 118. Moreover,

the majority's approach ignores the fact that this Court's decision in *Barren* binds us until it is set aside by an en banc panel of this court. *See* Third Cir. I.O.P. 9.1.

In sum, *Kubrick* must guide our analysis. The reasonable person is that individual who is armed with the facts regarding the injuries sustained. 444 U.S. at 123. *Barren* confirms as much by observing that the Supreme Court's concentration in *Kubrick* was on the objective aspects of the test and "whether [the plaintiff] possessed the facts such that, as a reasonable person, he should have known of " the injury and who caused it. *Barren*, 839 F.2d at 990; *see also* Restatement (Second) of Torts § 12 (stating that "the words 'should know' . . . denote the fact that a person of reasonable prudence and intelligence or of the superior intelligence of the actor *would ascertain the facts in question* . . . or would govern his conduct upon the assumption

59

that such fact exists") (emphasis added).  Because Vicki Miller

was repeatedly advised in October of 1995 that Henry's medical

status was caused by a reaction to his medications, and because

these facts demonstrate that a reasonable person should have

known at that time that Henry had been injured by the

government, the District Court correctly concluded that the

FTCA survival action filed more than two years later was time-

barred.[9]

II.

---

[9.]I also note that the record demonstrates that Vicki Miller
appreciated the cause of her brother's illness in December of
1995 when she wrote to Dr. Bongiorno, a physician at a health
care facility to which her brother had been transferred.  In her
letter, she explained that, according to another physician,
"Henry's condition was brought about by an adverse reaction to
drugs that were prescribed for him . . . ."  This evidence further
supports the conclusion that a reasonable person should have
known by late 1995 that Henry's illness was attributable to the
government's medical care.

I also disagree with the majority's conclusion that Miller's state survival action against Dr. Markowitz was timely filed. The majority reaches this conclusion, in my view, by misreading *Fine v. Checcio*, 870 A.2d 850 (Pa. 2005), as authority to apply a subjective test to determine whether the statute of limitations had run. By applying a subjective test, the majority takes account of the fact that the decedent had the mental age of a four year old and concludes that there is a genuine issue of fact as to whether the "decedent knew, or, more accurately, was even capable of knowing, that he was injured and the cause of his injury." Maj. op. at 34.

*Fine*, contrary to the majority's analysis, did not concern whether an objective or subjective test is to be employed in the application of the discovery rule to a statute of limitations dispute. Thus, the *Fine* Court did not abandon the objective test

61

used in determining whether the statute of limitations may be tolled by Pennsylvania's discovery rule. Rather, *Fine* concerned two mentally competent adults who did not discover until late in the two year limitations period that they had been injured by the negligence of their treating medical practitioners. The question before the Court was whether these plaintiffs had to file their cause of action within the remaining time in the two-year limitations period, or within two years of the discovery that they had been injured. The Court held that

> it is not relevant to the discovery rule application whether or not the prescribed period has expired; the discovery rule applies to toll the statute of limitations in any case where a party neither knows nor *reasonably should have known* of his injury and its cause at the time his right to institute suit

arises.

Id. at 859 (emphasis added).  Indeed, by focusing on "where a party . . . reasonably should have known," the Pennsylvania Supreme Court did not change the course of Pennsylvania's discovery rule.  Because application of the objective test shows that a reasonable person would have known of the decedent's injury and its cause more than two years before this suit was filed, I cannot agree with the majority that Miller's state law survival action against Dr. Markowitz was timely filed.

III.

The majority also concludes that Miller sufficiently pleaded wrongful death claims against Dr. Markowitz and the United States by alleging nothing more specific than negligence.

63

I can discern no wrongful death claims, even liberally construing the pleadings. The amended complaint, prepared and signed by experienced counsel, clearly states on the first page that Miller was bringing this action "pursuant to the Pennsylvania Survival Act, 42 Pa.Cons.Stat. § 8302." Thereafter, she asserts six counts alleging that the negligence of various persons caused the decedent to sustain various maladies and that he eventually died. In my view, the mere reference to death in the amended complaint, without more, is insufficient to put the defendants on notice that Miller was asserting, in addition to her clearly articulated survival action, a wrongful death claim under a separate statutory provision of Pennsylvania law, *i.e.*, 42 Pa.Cons.Stat. § 8301. *See Conley v. Gibson*, 355 U.S. 41, 47 (1957) (instructing that Rule 8 requires a statement of the claim "that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests").

64

Indeed, my review of the record fails to reveal any action by Miller, either before or after the District Court granted the motion for summary judgment, that indicated that Miller was in fact prosecuting a wrongful death action. The absence of a wrongful death claim would not have been surprising in light of the fact that Miller did not qualify as one of the enumerated beneficiaries for whom the statute created a right of action. *See* 42 Pa.Cons.Stat. § 8301(b) (stating that the "right of action created by this section shall exist only for the benefit of the spouse, children or parents of the deceased"). Although subsection (d) allows a personal representative, such as Miller, to bring a wrongful death action, any recovery is limited to specific types of damage that may have been incurred as a result of the injuries causing death. 42 Pa.Cons.Stat. § 8301(d) (specifying that the personal representative "may bring an action to recover damages for reasonable hospital, nursing, medical,

65

funeral expenses and expenses of administration necessitated by reason of injuries causing death").

Thus, the District Court understandably addressed only the merits of Miller's survival action. After the District Court entered judgment in favor of the United States and Dr. Markowitz and closed the case, Miller still did not take any action to notify the District Court that it had erred by dismissing her wrongful death claim. Instead of filing a motion for reconsideration, which would have provided the District Court with its first opportunity to address the viability of a wrongful death claim, Miller filed this appeal alleging error by the District Court. In light of the failure to plead a wrongful death action and the absence of any conduct which would have notified the District Court that this separate cause of action was at issue, I cannot subscribe to the majority's conclusion that the District

66

Court erred by conflating the two causes of actions.  Indeed, in my view, there were not two causes of action to conflate.

## IV.

In sum, I submit that Miller's FTCA and state law survival actions were time-barred because the cause of action accrued more than two years before she filed suit.  Because Miller did not allege a  wrongful death claim under the FTCA or state law, remand is unnecessary.  I would affirm the judgment of the District Court.